**UNITED STATES of America**
**v.**
**Dennis Eugene TINNEY, Appellants, et al.**

**No. 72–1612.**

United States Court of Appeals, Third Circuit.

Argued Dec. 1, 1972.

Decided Feb. 13, 1973.

As Amended March 2, 1973.

---

John Rogers Carroll, Philadelphia, Pa., for appellant.

Gilbert J. Scutti, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

This appeal presents a serious question concerning the application of the Fifth Amendment to the Constitution which provides that no person shall "be twice put in jeopardy of life or limb" for the same offense. The appellant Tinney and five co-defendants were indicted for conspiracy and bank robbery pursuant to 18 U.S.C. § 2113(a), (b), and (d). Tinney and three co-defendants were tried together. At the close of the government's case-in-chief, motions for judgment of acquittal were granted as to two of the co-defendants, leaving the prosecutions against Tinney and co-defendant Sellers for submission to the jury.

On the last day of this trial when all evidence had been presented, and prior to the closing arguments to the jury, it was brought to the court's attention that Tinney was not present.[1] Tinney's counsel, after having been granted permission to call Tinney's home to see if "there is anything amiss," reported, "His grandmother was out in the corridor there and she said he left at twenty minutes of 9 this morning, and she can't

---

1. Transcript, Jan. 27, 1970, p. 488. Court was convened at 10:05 A.M.

understand it. . . . "[2] The court then stated that if Tinney was not present in "ten minutes, I am going to have the marshals pick him up. I am going to revoke his bail and commit him."[3] After 10 minutes had elapsed, the trial judge, Judge Wood, declared that "we will proceed with the case of Mr. Sellers."[4] The following colloquy then took place;[5]

MR. LEIDNER [counsel for Tinney]: Do I understand you are declaring a mistrial in Tinney's case?

THE COURT: Oh, no, no. I am just simply stating what I said. Whatever bail he is on is forfeited, a bench warrant will issue, and he will be brought into court whenever the marshals pick him up. We will proceed from there. I am not going to declare a mistrial. If there is a mistrial, he has caused it.

\* \* \* \* \* \*

And I will fix bail then, perhaps, and he will sit in jail until I am ready to hear it.

MR. GOGGIN [counsel for Sellers]: Is Your Honor going to permit Mr. Leidner to finish his case as if the defendant were here?

THE COURT: Oh, no, not in the absence of the defendant. I can't do that.

Now it is down to you and Mr. Wright.

MR. GOGGIN: If Your Honor please, I believe the fact that Mr. Tinney hasn't shown up, while it is, of course, no fault of mine or my client, certainly reflects unduly upon our case, and I think it is somewhat prejudicial to my client at this juncture, in view of the circumstances, which, of course, is no fault of the court, the government, or anyone else, but I certainly think it casts a very unfavorable light on my position at this juncture.

THE COURT: What do you want?

MR. GOGGIN: Well, I would ask that we at least have a continuance for a brief period of time to see if this man is going to appear.

THE COURT: The motion is denied . . .

\* \* \* \* \* \*

MR. WRIGHT [counsel for the government]: May I inquire, sir, when we would proceed against Tinney?

THE COURT: I don't know until we apprehend him.

MR. WRIGHT: Well, surely Your Honor wouldn't retain this jury indefinitely?

THE COURT: Oh, no. This jury will determine Mr. Sellers' case.

The jury entered the courtroom at 10:28 A.M. The prosecutor began his closing address and stated that the only defendant remaining for the jury's consideration was Sellers.[6] After seven minutes, at 10:35 A.M., Tinney entered the courtroom, and the following occurred:[7]

THE COURT: Excuse me, Mr. Wright. Is that Tinney?

MR. LEIDNER: Yes, Your Honor.

THE COURT: Take him into custody, Mr. Marshal. Lock him up.

DEFENDANT TINNEY: Your Honor, sir, my car broke down on the Expressway.

THE COURT: Never mind. I am sorry Mr. Wright. Go ahead.

The case was thereafter submitted to the jury only as to Sellers. The jury was unable to reach a verdict and was thus discharged. Upon inquiry by the prosecutor as to whether a mistrial was declared with respect to Tinney, the court stated, "Well, if it is necessary to have it on the record, there is a mistrial insofar as Tinney is concerned."[8]

2. *Id.*

3. *Id.* at 489.

4. *Id.* at 489–490.

5. *Id.* at 490–491.

6. *Id.* at 492–493.

7. *Id.* at 496.

8. *Id.* at 548–549.

Tinney's present contention that the mistrial was erroneously declared was raised by way of a motion for judgment of acquittal and was denied by the court below. A motion for dismissal on the ground of double jeopardy was also denied at the start of Tinney's second trial on the same charges.[9] The re-trial resulted in Tinney's being found "guilty" by a jury on Count I (conspiracy) of the indictment and "not guilty" on the remaining substantive counts. This appeal followed.

■■■ Tinney contends that the double jeopardy clause barred his further prosecution after the trial judge, *sua sponte* and without his consent, withdrew his case from the jury and declared a mistrial at his first trial. The purpose of the constitutional prohibition against double jeopardy is to prevent the government from making repeated attempts to convict an individual of an alleged offense, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Thus a defendant has a "valued right to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). It is undeniable that Tinney was placed in jeopardy once he was put to trial before the jury in the first proceeding. In recognition of the fact that a criminal trial is "a complicated affair to manage,"[10] however, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, *supra*, at 689, 69 S.Ct. at 837.

Over 145 years ago, the Supreme Court in United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), opinion by Mr. Justice Story, formulated the standard which has continued to be applied in cases such as this one where a mistrial has been declared without the defendant's consent:[11]

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes. 22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165.

The standard of "manifest necessity" first adopted in *Perez* was recently reiterated by the Supreme Court in United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) as follows: "In the absence of such a motion [by the defendant for a mistrial], the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." This court emphasized in United States v. Brahm, 459 F.2d 546, 550–551 (3 Cir. 1972), that the trial judge must take " 'care to assure himself

---

9. Transcript, Jan. 20, 1971, p. 8.

10. United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

11. *E. g.*, Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1829); Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949); United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

that the situation warrant[ed] action on his part foreclosing the defendant from a potentially favorable judgment' (*Jorn*, at 486 of 400 U.S., at 557 of 91 S.Ct.)."

Mindful of the Supreme Court's admonition that any doubt should be resolved in favor of the liberty of the individual in order to prevent the exercise of "an unlimited, uncertain, and arbitrary judicial discretion," Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), *quoting* United States v. Watson, 28 Fed.Cas. pp. 499, 501, No. 16,651 (D.C.N.Y.1868), we conclude that the trial court failed to adequately protect Tinney's right to have his case decided by a particular tribunal.

Although a mistrial was not formally declared in Tinney's first trial until after the jury had failed to reach a verdict as to the co-defendant Sellers, we think that the decision to withdraw the jury as to Tinney and to proceed with the case against Sellers marked the point at which the mistrial was effectively declared.[12] This occurred after the trial judge had waited but ten minutes for Tinney to appear. Moreover, the decision was made without regard to other reasonable possibilities and without taking all the circumstances into consideration.[13]

United States v. Jorn, *supra*, teaches that, absent a motion for a mistrial by the defendant, the trial judge should not foreclose a defendant's option to proceed to the jury without a "scrupulous exercise of discretion" in determining whether a "manifest necessity" warrants the declaration of a mistrial. United States ex rel. Peetros v. Rundle, 342 F.Supp. 55, 60 (E.D.Pa.1972). *Jorn* places on the trial judge "a duty to exhaust all other reasonable possibilities before deciding to foreclose [a] defendant['s] op-

tion to proceed. . . . The scrupulous exercise of that discretion means that he must seek out and consider all avenues of cure to avoid trial abortion." United States v. Walden, 448 F.2d 925, 929 (4 Cir. 1971).

We find no "manifest necessity" here. The most obvious alternative, a continuance for a reasonable length of time to see if Tinney would appear or to investigate the cause for his absence, was refused.[14] The failure to utilize this reasonable alternative before aborting the trial constituted an abuse of discretion. This is not to say that the absence of the defendant may never justify discontinuance of a trial. Each case must turn on its facts.[15] Nor do we think that there is a minimum period of time which a court must wait before declaring a mistrial. But under the circumstances at bar, when only closing arguments to the jury were scheduled, no witnesses who might be unavailable or seriously inconvenienced thereafter were involved, the circumstances surrounding Tinney's absence were neither known nor sought after,[16] and there was no reason to believe that Tinney had fled, the court's failure to wait longer than ten minutes before declaring a mistrial was unjustified. "[T]he power [to abort] ought to be used with greatest caution, under urgent circumstances, and for very plain and obvious causes." United States v. Perez, *supra*, 22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165. It certainly can not be said that "the trial judge took 'care to assure himself that the situation warrant[ed] action on his part foreclosing the defendant from a potentially favorable judgment.'" United States v. Brahm, *supra*, at 550–551, *quoting Jorn, supra*, at 486, 91 S.Ct. 547.

---

12. See United States v. Walden, 448 F.2d 925, 931 (4 Cir. 1971).

13. Indeed, the trial judge had no knowledge of and did not seek to determine what the circumstances were, whether Tinney had fled, was ill, or, as appears from the record, was delayed merely because his car had broken down.

14. Transcript, Jan. 27, 1970, p. 491.

15. See Downum v. United States, 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

16. See Commonwealth v. Ferguson, 446 Pa. 24, 285 A.2d 189 (1971).

The government's argument that retrial was permissible because the declaration of a mistrial was precipitated by Tinney's misconduct is without merit. The record shows only that Tinney was delayed by no fault of his own.

We need not reach Tinney's other contention involving alleged error in his second trial, for our holding that his reprosecution violated the double jeopardy provision of the Fifth Amendment requires that the subsequent judgment of conviction be reversed.