

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-14-2004

# USA v. Rivera

Precedential or Non-Precedential: Precedential

Docket No. 03-1658

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"USA v. Rivera" (2004). *2004 Decisions.* Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  03-1658
UNITED STATES OF AMERICA
v.
FELIPE RIVERA,
Appellant
_____

Case No:  03-1659
UNITED STATES OF AMERICA
v.
HOMER WILLIS KELLY,
Appellant
_____

Case No:  03-1660
UNITED STATES OF AMERICA
v.
LUDVIG DANIELSON,
Appellant
_____

On Appeal From the District Court
of the Virgin Islands
District Judge: The Honorable Raymond
L. Finch
(D.C. V.I. 02-cr-00167-1; 3; 4)
Argued May 6, 2004
_____

Before: BARRY, AMBRO, and SMITH,
*Circuit Judges*

(Filed:    September 14, 2004 )

Jeffrey B. C. Moorhead (Argued)
C.R.T. Brow Building
1132 King Street
Christiansted, St. Croix
United States Virgin Islands 00820
*Counsel for Appellant Rivera*

Martial A. Webster
116 Queen Cross Street
Frederiksted, St. Croix
United States Virgin Islands 00840
*Counsel for Appellant Kelly*

Beverly A. Edney
P.O. Box 4958
Kingshill, St. Croix
United States Virgin Islands 00851
*Counsel for Appellant Danielson*

David M. Nissman
United States Attorney
St. Clair Theodore (Argued)
Assistant United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
United States Virgin Islands   00820
*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

This case involves the application of the Double Jeopardy Clause where a District Judge has *sua sponte* declared a mistrial over a defense objection. The defendants were indicted for violations of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 2. Near the close of the Government's case, a key witness injured his leg and was unable to appear in court as scheduled. Before the witness's prognosis could be ascertained by counsel or the District Court, and over the objection of defendants, the District Judge declared a mistrial, ordered the matter rescheduled for a new trial and denied a motion to

dismiss the indictment. The defendants brought this timely appeal. We conclude that the declaration of a mistrial was not manifestly necessary and, as such, reprosecution is barred.

I.

On December 3, 2002, the United States Attorney for the District of the Virgin Islands filed an indictment against Felipe Rivera, Homer Willis Kelly and Ludvig Danielson, charging each with one count of conspiracy to possess with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a) and 846. The indictment also charged each defendant with one count of attempting to possess with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a), and 846, and 18 U.S.C. § 2.[1]

A jury was empaneled and trial commenced on Monday, February 10, 2003. The trial proceeded over the course of the week, with the Government presenting its case. On Friday, February 14, the Government began the direct examination of its last witness, Christopher Schoenbaum. When the Friday session concluded, the District Court scheduled the resumption of trial for Tuesday, February 18, the day after Presidents' Day. Schoenbaum returned to Orlando, Florida for the long weekend.

Before trial resumed on Tuesday, February 18, the Government informed the Court that Schoenbaum had been hospitalized with a broken leg. According to the Government's attorney, Schoenbaum had undergone surgery during which a plate and several pins had been placed in his leg. The Government's information was that Schoenbaum was still in the hospital but that he was to be discharged in the near future. The trial was recessed until Thursday, February 20.

When court reconvened on the morning of February 20, the attorney for the Government explained that all that remained in the presentation of its case were tape recordings that would be played to the jury and the rest of the direct testimony of Schoenbaum.[2] The Government explained, however, that Schoenbaum would not be able to travel until the following week. Upon learning this, counsel for co-defendant Miranda-Colon, stated: "[Y]our Honor, for the record . . . we're going to move for a

---

[1] Two other individuals, Claude Earl Francis and Daniel Miranda-Colon, were charged in the same information and went to trial with the appellants. They are not parties to the present appeal.

[2] The exact nature of these tapes is unclear from the record. It is clear that Schoenbaum was heard on at least one tape, and that the recordings were lengthy. One of these tapes had been played to the jury, but 20 had not as of the time trial was to resume on February 18, 2003.

mistrial." Miranda-Colon's counsel explained that he was concerned about the lapse of time between the jury hearing the Government's direct examination and the eventual cross-examination of Schoenbaum by the defendants. Further, Miranda-Colon's attorney was concerned that, if Schoenbaum were required to use a wheelchair, the jury would be more sympathetic to his testimony. Counsel for the remaining defendants joined in support of the motion. Counsel for Kelly commented that he had concerns about two of his witnesses going on vacation if the trial were to be postponed. Danielson's counsel cited scheduling conflicts if the trial were to be postponed. Counsel for Rivera expressed his concern that he would look like "some kind of animal" cross-examining Schoenbaum while he was recuperating. The Government opposed the defendants' motion for a mistrial. The District Court ruled promptly and summarily: "Very well. Motion for mistrial is denied." The District Judge made no other statements, nor did he provide the defendants the opportunity to seek reconsideration of his ruling. The Court recessed the jury for the day, and scheduled trial to resume on Monday, February 24.

When February 24th arrived, the attorney for the Government informed the Court that Schoenbaum had attempted to board a plane to return to the trial, but was turned back when narcotic medications and syringes were found in his luggage. According to the prosecutor, the airline, after questioning Schoenbaum as to his reason for possessing the medication, also refused to allow him to board the plane without a doctor's waiver. Government counsel noted that Schoenbaum was scheduled for an appointment with his doctor at 10:00 A.M. that very day and advised the Court that "within a few hours we [will] know whether or not the doctor will release [Schoenbaum] to get on the plane."

The defendants requested that the Government go forward or that the Court strike Schoenbaum's testimony. Rivera's attorney informed the Court that he did not want a mistrial. Counsel for Miranda-Colon instead suggested that "perhaps [they] could resume testimony tomorrow." The Government pressed the Court for more time. The following discussion then ensued:

THE COURT: The fact of the matter is that in this case there is inconvenience to everyone, Court, counsel, the Government. I have 140 people ready to go in another trial in anticipation of something like this happening. The big problem for me in this case is the way in which the case has unfolded. That is, with frequent interruptions, numerous interruptions, the jurors having to sit for long periods of time, sometimes for days, as a matter of fact. Together with the fact that the large portion of the testimony was recorded, and a large portion of it, recorded testimony, is still to be

presented to the jurors. I find that the nature of the recording particularly is such that jurors are not likely to recall properly and fit into the proper sequence of events and give proper weight to this recorded testimony in light of the continued interruptions and the long delay. And I [am] dispose[d] to declaring a mistrial, and will so declare. I will declare a mistrial. Gentlemen and ladies, will you proceed downstairs to Magistrate Resnick, and he will reschedule the matter. I will discharge the jury.

[Counsel for Miranda-Colon]: For the record, Defendant Colon would like to object and ask for a dismissal.

THE COURT: Denied.

[Counsel for Rivera]: Denied?

[Counsel for Kelly]: I join in that.

THE COURT: Denied.

That same day, February 24, a Magistrate Judge issued an order re-scheduling trial for Monday, May 5, 2003. On March 5, 2003, the District Court issued a "notice" which read: "Defendants moved for a mistrial on February 24, 2003. At a hearing held on such motion, for the reasons stated on the record, the Court granted Defendants' motion." This timely appeal followed.

II.

We have jurisdiction over the District Court's rejection of the defendants' motion to dismiss under *Abney v. United States*, 431 U.S. 651, 662 (1977). While an order denying a motion to dismiss an indictment on double jeopardy grounds "lacks the finality traditionally considered indispensable to appellate review," *Abney* counsels that such orders satisfy the collateral order doctrine articulated in *Cohen v. Beneficial Industries Loan Corp. Id*. at 659 (discussing *Cohen v. Beneficial Industries Loan Corp.*, 337 U.S. 541, 546 (1949)). Because the District Court denied the defendants' motion to dismiss on what were clearly double jeopardy grounds, the jurisdictional requisites of § 1291 have been met. *Id*. at 662.

III.

The Double Jeopardy Clause forbids that "any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Under that clause, a defendant has a "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689 (1949), which is a right held by the individual, independent of the public interest in conducting "fair trials designed to end in just judgments," *Arizona v. Washington*, 434 U.S. 497, 503 n.11 (1978) (internal quotation and citation omitted).

Protections against double jeopardy

4

are ancient[3] and we interpret the Double Jeopardy Clause in light of "its origin and the line of its growth." *Green v. United States*, 355 U.S. 184, 199 (1957) (Frankfurter, J., dissenting) (quoting *Gompers v. United States*, 233 U.S. 604, 610 (1914)). The Double Jeopardy Clause's prohibition of multiple trials evolved in reaction to "a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict." *Washington*, 434 U.S. at 507.[4]

Accordingly, a defendant may not be reprosecuted where a first trial has ended with an improperly declared mistrial. *United States v. Perez*, 22 U.S. (9 Wheat) 579 (1824).

A mistrial "may be granted upon the initiative of either party or upon the court's own initiative." *United States v. Scott*, 437 U.S. 82, 92 (1978).[5] Ordinarily, where the defendant seeks a mistrial, "[n]o interest protected by the Double Jeopardy Clause is invaded." *Id.* at 100. The Government may, therefore, bring a subsequent reprosecution without offending the Constitution. *Love v. Morton*, 112 F.3d 131, 133 (3d Cir. 1997).[6]

---

[3] The Greek orator, Demosthenes, explained that "the laws forbid the same man to be tried twice on the same issue." *Whalen v. United States*, 445 U.S. 684, 699 (1980) (Rehnquist, J., dissenting) (citing 1 Demosthenes 589 (J. Vince trans., 4th ed. 1970)). Roman law contained similar prohibitions, with the precept in the Digest of Justinian that "the governor should not permit the same person to be again accused of a crime of which he had been acquitted." Jay A. Sigler, Double Jeopardy: The Development of a Legal and Social Policy 2 (1969); *see also Bartkus v. Illinois*, 359 U.S. 121, 152 n.3 (1959) (Black, J., dissenting).

[4] Repeated attempts to convict fell out of favor by the late Seventeenth Century and the reign of King James II, when prosecutions which subjected an individual to double jeopardy began to be barred. *Washington*, 434 U.S. at 508 n.23 (citing *State v. Garrigues*, 2 N.C.

188, 189 (1795)).

[5] *See Washington*, 434 U.S. at 498 (holding that defense counsel's improper statements created manifest necessity for the state trial court to grant the prosecution's motion for a mistrial); *United States v. Valadez-Camarena*, 163 F.3d 1160, 1163 (10th Cir. 1998) (noting that reprosecution is usually barred where the prosecution requested the mistrial).

[6] We reject the Government's contention that the defendants requested the mistrial at issue here. In its March 5, 2003 "notice," the District Court did state that the defendants had moved for a mistrial and that the motion was granted at a subsequent hearing. Yet defendants did not request the mistrial declared on February 24, which provides the basis for

A fundamentally different analysis applies where a mistrial is sought by the Government, or, as here, entered by the Court *sua sponte*. There is an inherent danger that the Government will "enter[] upon the trial of the case without sufficient evidence to convict" and request a mistrial simply to marshal a better case. *Downum v. United States*, 372 U.S. 734, 737 (1963). Similarly, the Double Jeopardy Clause "prevents a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury might not convict." *Green*, 355 U.S. at 188. The power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Perez*, 22 U.S. (9 Wheat) at 580. Only where the mistrial is required by "manifest necessity" will reprosecution be permitted under the Double Jeopardy Clause. *Scott*, 437 U.S. at 92.[7]

The realities of litigation preclude a precise definition of "manifest necessity":

> [A] criminal trial is, even in the best of circumstances, a complicated affair to manage. The proceedings are dependent in the first instance on the most elementary sort of considerations, *e.g.*, the health of the various witnesses . . . . And when one adds the scheduling problems arising from case overloads, and the Sixth Amendment's requirement that the single trial to which the double jeopardy provision restricts the Government be conducted speedily, it becomes readily apparent that a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the

_____

the present double jeopardy claims. The mistrial they had earlier sought was flatly denied by the District Court on February 20. The record is clear on this, and the District Court's statement on March 5, 2003 that the defendants sought the February 24 mistrial is plainly wrong.

[7] *See also United States v. Stevens*, 177 F.3d 579 (6th Cir. 1999) (reversing the District Court's denial of defendant's motion to dismiss on double jeopardy grounds after the Government moved for a dismissal when its key witness failed to

_____

testify); *United States v. Sammaripa*, 55 F.3d 433 (9th Cir. 1995) (reprosecution barred where government moved for a mistrial, which was subsequently granted by the district court, on the grounds that the defendant had improperly exercised peremptory challenges during jury selection); *United States v. Council*, 973 F.2d 251, 256 (4th Cir. 1992) (where the prosecuton failed to show his request for mistrial was based upon a manifest necessity, reprosecution was barred); *United States v. Ruggiero*, 846 F.2d 117, 123 (2d Cir. 1988) ("when the Government moves for a mistrial, it must show a high degree of necessity, a 'manifest necessity,' to avoid a double jeopardy bar to a subsequent prosecution").

6

defendant's consent would be too high a price to pay . . . .

*United States v. Jorn,* 400 U.S. 470, 479-80 (1971); *see also Illinois v. Somerville,* 410 U.S. 458, 463 ("The interests of the public in seeing that a criminal prosecution proceed to verdict . . . need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest."). Nevertheless, "trial judges may declare a mistrial without barring reprosecution only in extraordinary circumstances." *United States ex rel. Russo v. Superior Court of N.J.*, 483 F.2d 7, 13 (3d Cir. 1973).

The question of whether "manifest necessity" existed in the case before us is a mixed question of law and fact over which we exercise plenary review. *Id.* at 15 (citing *Townsend v. Sain*, 372 U.S. 293, 309 n.6 (1963)); *United States ex rel. Thomas v. State of N.J.*, 472 F.2d 735, 737-38 (3d Cir. 1973). Reprosecution may be had when the mistrial is necessitated by the jury's inability to agree upon a verdict. *Perez*, 22 U.S. (9 Wheat) at 580; *Richardson v. United States*, 468 U.S. 317, 325 (1984) ("the failure of the jury to reach a verdict is not an event which terminates jeopardy"). Further, if a juror is biased, *Simmons v. United States*, 142 U.S. 148 (1891), or served on the indicting grand jury, a trial judge may declare a mistrial without precluding a second prosecution, *Thompson v. United States*, 155 U.S. 271 (1894). Where, as here, the basis for the District Court's declaration of a mistrial is the unavailability of a prosecution witness, "the strictest scrutiny

is appropriate." *Washington*, 434 U.S. at 508; *Crawford v. Fenton*, 646 F.2d 810, 817 (3d Cir. 1981) ("If, for example, a mistrial has been granted in order to allow the state to achieve a tactical advantage, then the strictest scrutiny is appropriate.").

Critically, a mistrial must not be declared without prudent consideration of reasonable alternatives. Federal Rule of Criminal Procedure 26.3 requires that, "[b]efore ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." The dialogue fostered by Rule 26.3 ensures that only those mistrials that are truly necessary are ultimately granted. *Crawford*, 646 F.2d at 817-18; *United States v. McKoy*, 591 F.2d 218, 223 (3d Cir. 1979). The Government bears the burden of demonstrating that, "under the circumstances confronting the trial judge, he had no alternative to the declaration of a mistrial." *McKoy*, 591 F.2d at 222 (citing *Jorn*, 400 U.S. at 487). Ultimately, however, the District Court must exercise prudence and care, giving due consideration to reasonably available alternatives to the drastic measure of a mistrial. *Crawford*, 646 F.2d at 818-19. Where a District Court *sua sponte* declares a mistrial in haste, without carefully considering alternatives available to it, it cannot be said to be acting under a manifest necessity. *Morton,* 112 F.3d at 134-35; *accord Glover v. McMackin*, 950 F.2d 1236 (6th Cir. 1991); *Cherry v. Dir. State Bd. of Corr.*, 635 F.2d 414 (5th Cir.

1981) (en banc); *Brady v. Samaha*, 667 F.2d 224, 229 (1st Cir. 1981). Any subsequent reprosecution under those circumstances is barred by the Double Jeopardy Clause.

IV.

The record in this case demonstrates that the District Court failed to consider both the constitutional implications attendant to the declaration of a mistrial, as well as the reasonable alternatives to a mistrial. Ordinarily, the Government bears a heavy burden of demonstrating that there is no alternative but to declare a mistrial. *McKoy*, 591 F.2d at 222. Here, however, the Government opposed the mistrial, informing the Court that Schoenbaum was meeting with his doctor to obtain the necessary release to travel to the Virgin Islands. Rather than demonstrate manifest necessity, the Government presented the Court with a reasonable alternative to a mistrial, *i.e.*, that the Court wait "a few hours [to] know whether or not the doctor will release [Schoenbaum] to get on the plane."

The concerns identified by the District Court do not justify rejection of this alternative, nor do they amount to manifest necessity. First, the District Court expressed concern about the scheduling difficulties Schoenbaum's absence created. The judge explained that the trial had provided an "inconvenience to everyone, Court, counsel, the Government." The Court further observed that it was scheduled to begin another trial soon. Scheduling considerations, however, do not outweigh the Court's duty to protect the defendants' constitutional right to be required to stand trial only once and are, by themselves, insufficient to support the declaration of a mistrial. *Jorn,* 400 U.S. at 479-80.

Second, the District Court expressed concern that the deliberating jurors might have difficulty piecing together the evidence following a disjointed trial. Yet at the time the judge declared the mistrial, only three calendar days had passed since the Court had rejected the defendants' own request for a mistrial. Further, Schoenbaum had an appointment with his doctor at the very moment that the Court considered declaring a mistrial. The record provides no basis on which to conclude that the three prior days had significantly eroded the jury's ability to recall testimony, or that further erosion would occur in the short time needed to determine Schoenbaum's prognosis.

What makes this declaration of a mistrial particularly troubling is that it was due to the absence of a prosecution witness. As the Supreme Court explained above, the "strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of the critical prosecution evidence." *Washington*, 434 U.S. at 508. This is not to say that the absence of a key witness can never constitute manifest necessity. *See, e.g., Downum*, 372 U.S. at 737 (cautioning that, based on the facts presented, the absence of a witness could constitute manifest necessity for a mistrial). The District Court, however,

8

must take great care to ensure that there are no available alternatives before declaring a mistrial in such circumstances. *E.g., United States ex rel. Gibson v. Ziegele*, 479 F.2d 773, 778 (3d Cir. 1973).[8] That the Government itself presented the District Court with a reasonable alternative to a mistrial places the Government in a poor position to now argue that the District Court exercised such care.

The Government's attempt to analogize this case to the unforeseeable circumstances that necessitated a mistrial in *Wade* misses the mark. 336 U.S. at 687. *Wade* arose out of a court martial initially convened in Krov, Germany during World War II. A mistrial was declared after a key witness became ill at the same time that the Army unit was forced by the ongoing conflict to relocate. *Id.* at 689. The District Court here was hardly presented with the prospect of advancing armies or the invasion of hostile territory. Instead, a

prosecution witness simply broke his leg while away from the jurisdiction on a long weekend. *Wade* is completely inapposite to the comparatively trivial trial inconvenience that the District Court faced.

Instead, the facts of this case are much closer to those in *United States v. Tinney*, 473 F.2d 1085 (3d Cir. 1973). Tinney was not present when the final day of his trial began, and the judge inquired as to his whereabouts. Tinney's lawyer explained that he had phoned his client's home and been assured that the defendant had set out for court some time before. The trial judge then stated that "'if Tinney was not present in 'ten minutes, I am going to have the marshals pick him up. I am going to revoke his bail and commit him.'" *Id.* at 1087. The defendant's counsel objected, and asked for a short continuance to determine the whereabouts of his client. The motion was denied. Approximately ten minutes after the jury entered the room, Tinney appeared and explained that his vehicle had broken down on the drive to the courthouse. The judge ordered Tinney taken into custody and declared a mistrial. *Id.* This Court was troubled that "the decision was made without regard to other reasonable possibilities and without taking all the circumstances into consideration." *Id.* at 1089. We concluded that the trial court's decision to declare a mistrial, after waiting only ten minutes for the defendant to arrive, was unjustified and did not display the care necessary to ensure that the situation warranted such drastic action. *See also Morton*, 112 F.3d at 134-35

---

[8] In *Ziegele*, a key prosecution witness was too ill to testify after initially being present on the first day of a murder trial. *Id.* at 775. The Court declared a recess for the remainder of the day in order to ascertain the severity of the witness's illness. The next day the Court learned that the witness would be unable to testify for several weeks. It was only after gaining this information and conducting "considerable discussion" with the parties that the trial court declared a mistrial. *Ziegele*, 479 F.2d at 775-78.

(barring reprosecution where the trial judge declared a mistrial almost immediately after learning of the death of his mother-in-law; although this Court found the trial judge's distress understandable, a decision as to the course of the trial could have been made at a later date when there had been time for careful consideration of the appropriate alternatives).

We therefore conclude that the District Judge did not exercise "'sound discretion' in declaring a mistrial." *Washington*, 434 U.S. at 514. Choosing not to await the final prognosis of Schoenbaum's ability to appear and testify, the District Judge prematurely declared a mistrial without considering the constitutional import of his decision. Because the declaration of a mistrial was not manifestly necessary, any subsequent reprosecution of the defendants is barred by the Double Jeopardy Clause. The District Court's order denying the defendants' motion to dismiss will be reversed.