**UNITED STATES of America,**

v.

**Christobel GOMEZ, Appellant.**

No. 04–1765.

United States Court of Appeals, Third Circuit.

Argued Dec. 17, 2004.

Decided Feb. 4, 2005.

St. Clair Theodore (Argued), Office of the United States Attorney, Christiansted, St. Croix, USVI, for Appellee.

Joel H. Holt (Argued), Law Offices of Joel H. Holt, Christiansted, St. Croix, USVI, for Appellant.

Before SLOVITER, FUENTES and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Petitioner Christobel Gomez was charged with conspiracy, aiding and abetting and possession with intent to distribute. After dismissing Gomez's counsel for conflict of interest, the District Court declared mistrial. Gomez appeals removal of his counsel and the declaration of mistrial without prejudice. We deny the petition to review removal of Gomez's counsel because it is not a final order and affirm the declaration of mistrial because it was supported by manifest necessity.

I.

As we write only for the parties, we present only the relevant facts. Gomez's trial, together with those of six other defendants, began on March 1, 2004. The problem in this case began when, on March 5, 2004, the government raised the possibility of a conflict of interest with respect to defense counsel, Darwin Carr, because Carr had represented one of the government's potential witnesses, former U.S. Marshal John Perrine, in a civil proceeding. During an in camera hearing, Carr stated that, because of his representation of Perrine, he could not cross-examine Perrine and had confidential information about the inner workings of the U.S. Marshal Service. In light of his exhaustive preparation for and familiarity with Gomez's case, Carr asked the judge if he could assist any substitute counsel. The District Court found it impossible either for another attorney to quickly get up to speed on Gomez's case or for Carr to assist his replacement without triggering a conflict. The District Court then declared mistrial.

On March 8, Gomez filed a motion to reconsider Carr's disqualification. Both Perrine and Gomez waived their counsel's conflict of interest. The District Court denied Gomez's motion in a Memorandum Opinion on March 17, 2004, finding that Gomez "could not conceivably have [waived his counsel's conflict] knowingly, intelligently and with full awareness of the likely consequences." The court went on to note that "[b]ecause [Carr] could not be aware of all the details of the case and the evi-

dence to be presented at this stage, counsel could not adequately advise [Gomez] concerning the risks inherent in waiving any conflict of interest that should arise." The District Court also observed that Perrine had not waived his attorney-client privilege.

This appeal followed. At the time of briefing, Gomez's motion to dismiss the new proceedings against him had not yet been decided.

## II.

■ We first address the appealability of the District Court's Order removing Carr as Gomez's counsel for conflict of interest. Generally, a defendant may appeal only from a judgment of conviction and sentence. 28 U.S.C. § 1291 provides that federal courts of appeal "have jurisdiction of appeals from all final decisions of the district courts." Unless it qualifies under the collateral order exception, a judgment is not final "until there has been a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Van Cauwenberghe v. Biard,* 486 U.S. 517, 521, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). In *Flanagan v. United States,* 465 U.S. 259, 265, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the Supreme Court held that a pretrial order disqualifying counsel was not a final order because any prejudice to the defendant can be remedied after conviction and imposition of a sentence. For the same reasons, the District Court's Order removing Carr was not a final judgment and we have no jurisdiction to consider the disqualification order on appeal. Although the Order removing

Carr is not directly appealable, we do address, in connection with Gomez's Double Jeopardy claim, whether the District Court had good reason for declaring mistrial despite Gomez's waiver of conflict. *See infra* Part IV.

## III.

Gomez also appeals the District Court's declaration of mistrial on Double Jeopardy grounds. Again, a defendant normally may appeal only from a judgment of conviction and sentence. However, *Flanagan* allows for a narrow exception: the collateral order rule. 465 U.S. at 265, 104 S.Ct. 1051. Under that exception, an order may be appealed prior to conviction if it conclusively determines the disputed question; resolves an important issue completely separate from the merits of the action; and it is effectively unreviewable on appeal from a final judgment. *Id.* Among the few claims that may be heard prior to conviction under the collateral order rule are Double Jeopardy claims. The rationale is that the very constitutional interest at stake, i.e., the right not to be tried, would be lost if appeal were delayed until completion of a second trial. *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). Because Gomez appeals the District Court's Order of mistrial in order to preserve his rights under the Double Jeapardy clause, we may exercise jurisdiction over his appeal at this time.[1]

## IV.

■ We now address the merits of Gomez's claim that the District Court's declaration of mistrial was improper. We re-

---

1. Gomez need not wait until his pending motion to dismiss is denied. Because the charges against him stand, accepting jurisdiction now rather than later is consistent with the principle in *Abney* that a defendant's Dou-

ble Jeopardy claim should be reviewed before a second exposure to risk, embarrassment, expense, and ordeal. *Id.* at 661–62, 97 S.Ct. 2034.

view the decision to declare mistrial for abuse of discretion. *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *see also United States v. Jorn*, 400 U.S. 470, 483, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

The Fifth Amendment provides that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb." However, in limited circumstances, second trial after mistrial is justified. Second trial is permitted where a judge declares mistrial out of "manifest necessity." *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). *See also Arizona*, 434 U.S. at 505, 98 S.Ct. 824; *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *United States v. Sup.Ct. Of New Jersey*, 483 F.2d 7, 13 (3d Cir.1973). Application of the manifest necessity standard involves mixed questions of law and fact and is subject to plenary review. *See United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004); *Sup.Ct. Of New Jersey*, 483 F.2d at 15.

In reviewing the trial court's declaration of mistrial, we must look to (1) the possibility of manipulation by the government; (2) the nature of the interest advanced by mistrial, and; (3) the consideration and availability of alternatives to mistrial. *Sup.Ct. Of New Jersey*, 483 F.2d at 14.

The "inherent danger" that the Government entered the trial of a case when it knew or should have known it lacked sufficient evidence to convict is implicated not just when the government moves for mistrial but also when a trial court declares mistrial sua sponte as a result of a dilemma attributable to the government's choice of conduct. *See Rivera*, 384 F.3d at 54. Gomez claims that "it is quite possible that the prosecutor's motive [in insisting on the possibility that Perrine was a possible witness] was to avoid the problems with his case."

But Gomez has not *shown* that the government's interest in using Perrine as a witness was a bad faith move intended to avoid acquittal. *See United States v. Ziegele*, 479 F.2d 773, 778 (3d Cir.1973) (finding judge did not abuse his discretion in declaring mistrial and refusing to infer misconduct where defendant presented "no evidence" that "trial judge discharged the jury in order to give the prosecution the advantage of a second trial"). As there is no evidence of manipulation in this case, we next consider the District Court's reasons for declaring mistrial.

The District Court's interest in protecting Gomez's Sixth Amendment right to effective counsel competed with Gomez's right to have his trial completed by a particular tribunal. *See Wheat v. United States*, 486 U.S. 153, 161, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ("[T]rial courts confronted with multiple representations face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule."); *United States v. Combs*, 222 F.3d 353, 359–60 (7th Cir.2000) (discussing District Court's Catch 22). Because "trial courts ... have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment," waiver by Gomez and Perrine did not cure the problem posed by Carr's conflict. *Wheat*, 486 U.S. at 161, 108 S.Ct. 1692. *See also United States v. Arrington*, 867 F.2d 122, 129 (2d Cir.1989) (finding manifest necessity for mistrial despite waiver of conflict by defendant); *Combs*, 222 F.3d at 361 (same). The District Court's resolution of the tension between Gomez's Fixth and Sixth Amendment rights in this context is entitled to substantial deference. *See Wheat*, 486 U.S. at 162–63, 108 S.Ct. 1692; *United States v. Voigt*, 89 F.3d 1050, 1077 (3d

Cir.1996). We cannot say the court's assessment of Carr's conflict of interest was unreasonable.

Even if the potential conflict of interest in Gomez's case could have justified mistrial, it does so only if no lesser remedy would have sufficed. *United States v. McKoy,* 591 F.2d 218, 222 (3d Cir.1979). *See also Love v. Morton,* 112 F.3d 131, 137 (3d Cir.1997). In his brief on appeal, Gomez suggests that the trial court could have adopted any of a number of alternatives to mistrial.

*First,* he suggests that Carr could have continued as counsel until the government in fact called Perrine as a witness. But the District Court clearly rejected Perrine's assessment of the relevance of his own knowledge and decided instead that there was already a serious possibility that Perrine could be called on rebuttal if the government's investigation were attacked, which was the line defense counsel were pursuing at that time. It did not have to wait until the potential conflict actualized. *See Wheat,* 486 U.S. at 164, 108 S.Ct. 1692.

*Second,* Gomez suggests that the court could have waited to recuse Carr, as Carr himself requested at the time, until certain potentially dispositive motions pertaining to an alleged *Brady* violation were resolved. As Gomez has not shown that there was a *Brady* violation, let alone that a motion for dismissal based on a *Brady* violation would have resulted in dismissal with prejudice, he has not presented a viable alternative to mistrial.

Gomez's *third* proposed alternative is that Carr could have continued as Gomez's counsel and the court could have appointed other counsel for the limited purpose of cross-examining Perrine if he were called as a witness by the government. However, the District Court may have concluded that the issue of law enforcement misconduct had become so central to Gomez's

case that information which Carr admitted he had obtained from Perrine concerning "the inner working of the U.S. Marshal Service" might taint other aspects of Carr's representation of Gomez.

Gomez's *final* proposed alternative is that he should have been allowed to proceed on a pro se basis, perhaps with the assistance of Carr. This was clearly not a viable option since Carr himself insisted that the case was so complex that even another attorney could not be brought up to speed quickly. After a careful and thorough examination of the record, we conclude that the District Court had no viable alternative to mistrial

In order to ensure that it declares mistrial only where no alternatives are available, a trial court must solicit and contemplate alternatives before it declares mistrial. Fed.R.Crim.P. Rule 26.3 requires that the court give "each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Accordingly, we must also consider whether the trial "showed sufficient caution before its declaration" of mistrial. *United States v. Gantley,* 172 F.3d 422, 429 (6th Cir. 1999). *See also Jorn,* 400 U.S. at 485, 487, 91 S.Ct. 547 (holding the trial judge acted so abruptly that the parties had no opportunity to suggest alternatives to mistrial and "made no effort to exercise a sound discretion" to assure that mistrial was manifestly necessary); *Rivera,* 384 F.3d at 56; *United States v. Simonetti,* 998 F.2d 39, 41 (1st Cir.1993).

In this case, the District Court did take the requisite steps to ensure mistrial was not hastily declared. It inquired with Carr as to the likely scope of his conflict and discussed certain alternatives to mistrial. Moreover, though Gomez was not given any opportunity to participate in the initial decision-making regarding mistrial,

both he and his counsel had meaningful opportunity to explore alternative ways to work around Carr's conflict when the District Court judge specifically invited them to file a Motion for Reconsideration. Carr did file that motion for Gomez and the District Court issued its denial in a written opinion, where it explained why Carr had to be recused. The District Court's apparent failure to consider more remote alternatives to mistrial is less troubling than it otherwise would be where the court gave the parties ample opportunity to propose alternatives. *Cf. Love*, 112 F.3d at 138–39 (holding mistrial was improper where counsel did not have meaningful opportunity to object).

## V.

The District Court had an important interest in protecting Gomez's Sixth Amendment right to effective counsel. Even with the advantage of hindsight, Gomez does not identify any alternative to mistrial clearly adequate to protect that right. In light of the substantial deference afforded the District Court in this context, we cannot say that mistrial was not a manifest necessity. For the foregoing reasons, we deny the petition for review of the order of recusal and affirm the order of mistrial.