**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-3002

———————

UNITED STATES OF AMERICA

v.

CLYDE EDINBOROUGH, Jr.,

Appellant

———————

On Appeal from the District Court
of the Virgin Islands
District Court  No. 3-04-cr-00154-006
United States District Judge: The Honorable James T. Giles

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2010

Before: SMITH, CHAGARES, and JORDAN, *Circuit Judges*

(Filed: May 13, 2010)

———————

OPINION

———————

SMITH, *Circuit Judge.*

Clyde Edinborough, a cocaine supplier, was convicted of possession with intent to

1

distribute, in violation of 21 U.S.C. § 841. His conviction stemmed from a November 2003 seizure of cocaine at Miami International Airport. The cocaine was found in a bag arriving from Cyril E. King Airport, located in St. Thomas, U.S. Virgin Islands. At trial, the Government established that Edinborough contacted Danny Rawlins, a Cyril E. King Airport worker who eventually worked as an informant for authorities, in November of 2003, to place cocaine on a plane headed to Miami International Airport. At that time, Rawlins and other airport workers were surreptitiously moving drugs through Cyril E. King Airport for profit. In exchange for money, they would pack cocaine-filled bags onto airplanes for transport to the mainland United States.[1]

Edinborough raises seven challenges to his conviction.[2] He argues that the District Court erred by (1) admitting into evidence the roller bag containing cocaine that was found on November 19, 2003, at Miami International Airport, (2) permitting hearsay testimony, (3) denying his motion for a mistrial based on Rawlins's contradictory

---

[1] Because we write only for the parties, we will presume knowledge of the record.

[2] Edinborough, citing Rule 28(i) of the Federal Rules of Appellate Procedure, also purports to adopt all issues raised within the trial and appellate briefs of his co-defendants. Rule 28(i) provides that "[i]n a case involving more than one appellant . . . any party may adopt by reference a part of another's brief." Fed. R. App. P. 28(i). But it does not excuse compliance with Rule 28(a), which requires that the "appellant's brief . . . contain . . . a statement of the issues presented for review[.]" Fed. R. App. P. 28(a)(5). Edinborough's blanket adoption of all the issues raised by his co-defendants, without any specification of the discrete issues to be adopted, does not satisfy Rule 28(a)(5)'s directive. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (rejecting attempt to adopt co-appellants' arguments by a cursory reference in brief). As such, we conclude that he has abandoned and waived these unspecified, adopted issues. *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

testimony, (4) denying his motion for a directed verdict of acquittal, and (5) denying him a new trial based on jury bias and juror misrepresentations during voir dire. On top of these alleged errors, Edinborough further argues that (6) Rawlins committed perjury and the Government engaged in prosecutorial misconduct, and (7) he was improperly sentenced.[3] The arguments presented are meritless and we will affirm the District Court's judgment.[4]

## I.

Edinborough argues that the roller bag seized by authorities in Miami International Airport on November 19, 2003, was improperly admitted at trial because it did not match Rawlins's description of the bag he gave to Mervin Dorival, the organizer of the cocaine trafficking ring at Cyril E. King Airport, for shipment to Miami. Rawlins testified that the cocaine was packed in a duffel bag when he gave it to Dorival for shipment to Miami, yet the bag seized by authorities in Miami was a roller bag. On Rawlins's direct examination, the Government did not present the roller bag for his identification as the bag he gave to Dorival. Instead, the Government had Special Agent Hector Quintana of Immigration and Customs Enforcement, the agent who seized the bag in Miami, identify

---

[3] In addition, Edinborough argues that the District Court erred by permitting the Government to read witness testimony during closing arguments and by unfairly favoring the Government during trial. After reviewing these claims and the record we conclude that they have no merit.

[4] The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

the roller bag. After the roller bag was identified by Special Agent Quintana, the District Court, over Edinborough's objection that the bag was not relevant, admitted the bag into evidence. Edinborough now argues that the roller bag was inadmissible because it was not relevant; it was not connected to him through testimony. *See* Fed. R. Evid. 402.[5] In the alternative, he argues that the admission of the roller bag into evidence constituted a variance.[6]

Edinborough's challenge to the admission of the roller bag fails. The bag met the low threshold for relevance because it, *inter alia*, contained cocaine, it was shipped from Cyril E. King Airport, and its existence corroborated Rawlins's testimony that cocaine was shipped to Miami via Dorival. The Government's decision to not have Rawlins identify the roller bag and Rawlins's testimony that the cocaine was in a duffel bag go to the weight of Rawlins's testimony and were not grounds for excluding the roller bag. Accordingly, we conclude that the District Court did not abuse its discretion by admitting the roller bag into evidence.

The variance argument also fails. A variance occurs "where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment." *Daraio*, 445 F.3d at 259. The indictment

---

[5] "We review the District Court's evidentiary rulings for abuse of discretion." *United States v. Williams*, 458 F.3d 312, 315 (3d Cir. 2006).

[6] We exercise plenary review over properly preserved claims of variance. *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006).

does not specify the type of bag used to ship the cocaine, so there was no variance from the indictment.

## II.

Edinborough argues that Rawlins's testimony about a tape-recorded conversation he had with Edinborough contained hearsay.[7] Edinborough neither identifies the alleged hearsay statements nor provides an argument for why those statements are hearsay. Instead, his argument is based solely on the premise that the tape-recorded conversation itself was deemed hearsay by the District Court and not published to the jury. Based on the record before us, it appears that this premise is incorrect. While permitting the Government to question Rawlins regarding his conversation with Edinborough, the District Court referenced the publication of tape-recorded conversations to the jury. Even if the tape-recorded conversation was not published to the jury, Edinborough has not explained why Rawlins's testimony contained hearsay. Thus, we reject his argument.

## III.

Next, Edinborough argues that he should have been granted a mistrial based on Rawlins's contradictory testimony during direct and redirect examination.[8] On direct

---

[7] Whether testimony is hearsay is a question of law over which we exercise plenary review. *United States v. Lopez*, 340 F.3d 169, 175 (3d Cir. 2003).

[8] We review the denial of a motion for a mistrial for an abuse of discretion. *United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001). "[A] mistrial must not be declared without prudent consideration of reasonable alternatives." *United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004).

examination by the Government, Rawlins said he met with Edinborough twice: once during June or July of 2003 and again in November of 2003. On redirect examination, Rawlins testified that he met with Edinborough in June and July of 2003. The Government then asked Rawlins if he met with Edinborough any other time and Rawlins testified that he met Edinborough a third time. At that point, the District Court held a side-bar with the Government and defense counsel. During that side-bar, Edinborough's counsel pointed out that Rawlins's testimony on redirect contradicted his testimony on direct. In response, the District Court invited Edinborough's counsel to challenge Rawlins's credibility based on that contradiction. The District Court then issued a cautionary instruction to the jury instructing it to ignore Rawlins's testimony that he met Edinborough a third time. Edinborough's counsel moved for a mistrial, stating that the cautionary instruction was not enough to "unring the bell" with the jury. That motion was denied.

After the District Court issued the cautionary instruction, the Government proceeded with its questioning of Rawlins. Unfortunately for the Government, Rawlins's new testimony simply reiterated the contradiction identified by Edinborough's counsel. Rawlins stated that he met with Edinborough twice and repeated that the second meeting was in July, instead of November. The District Court then held another side-bar, which it began by stating to the Government:

> At the risk of impeaching your own witness, I think you have to
> clarify -- . . . for the jury, for everybody, just what these months

6

> were. They were two. And you may recall to him what he said on direct, if you have to. But we're not going to leave it like this.

Edinborough's counsel requested that the contradictory testimony be left as is. After some back and forth between Edinborough's counsel and the Government over whether it should be permitted to continue questioning Rawlins, the District Court ultimately let the contradictory testimony stand.

The District Court did not abuse its discretion in denying Edinborough's motion for a mistrial. *See Weaver*, 267 F.3d 231 at 245. Its decision to let the contradictory testimony stand after permitting the Government one chance to cure the contradiction was a reasonable alternative to a mistrial. *See Rivera*, 384 F.3d at 56. Edinborough benefitted from the contradictory testimony because the contradictions undermined Rawlins's credibility. Indeed, Edinborough's counsel requested that the contradictory testimony be left as is and the District Court honored that request.

IV.

Edinborough also argues that Rawlins's contradictory testimony constituted a variance in the Government's evidence and required a judgment of acquittal. According to Edinborough, "there is no evidence of a drug transaction in November 2003 by the plain and clear testimony of Rawlins on redirect stating [that] the last transaction occurred in July 2003." Edinborough's argument fails to account for Rawlins's testimony on direct examination that there was a November 2003 transaction and Special Agent Quintana's

7

testimony that he found drugs in a bag at Miami International Airport that had arrived from St. Thomas on November 19, 2003. Any contradiction in Rawlins's testimony went towards his credibility and the probative value of his testimony. We see no indication of a variance and we reject Edinborough's argument.[9]

## V.

Edinborough argues that his trial was infected with jury misconduct and juror misrepresentations during *voir dire*. Six months after Edinborough's conviction he moved for investigation into jury misconduct based on a letter submitted by an alternate juror, Linda Maratea. Maratea alleged that Feldere Webster-Lee, a member of the jury hearing Edinborough's case, told her that Edinborough was a Prince Hall Mason, the Prince Hall Masons were out of control and needed to be stopped, and other Prince Hall Masons were prosecuted for a violent crime in the past but they were acquitted because they were Prince Hall Masons.[10]

The jury misconduct issued boiled down to Maratea's word against Webster-Lee's word, and the District Court did not find Maratea's testimony credible. Webster-Lee's

---

[9] Edinborough also raises two related arguments, both of which fail. First, he claims that the duffel bag versus roller bag discrepancy was grounds for a judgment of acquittal. We disagree. Edinborough's argument pertains to fact-finding and does not justify a judgment of acquittal. Second, he argues that contradictory evidence regarding the amount of cocaine he gave to Rawlins for shipment constituted a variance in the indictment. After reviewing the record, we conclude that there was no variance.

[10] We review the District Court's consideration of jury misconduct allegations for an abuse of discretion. *United States v. Boone*, 458 F.3d 321, 326 (3d Cir. 2006).

8

testimony, on the other hand, was credited by the District Court. In light of the District Court's diligent efforts in investigating the allegations of jury misconduct and its findings based on that investigation, we conclude that the District Court did not abuse its discretion in determining that there was no jury misconduct.

Edinborough's claim that the District Court erred during *voir dire* likewise fails. This argument is based on Webster-Lee's purported knowledge of Edinborough and bias against him. During the hearing investigating juror misconduct, Webster-Lee admitted that she knew Edinborough "by seeing him," but she also testified that she had no opinion on his guilt during *voir dire*, she sought to answer every question during *voir dire* truthfully, and she accorded Edinborough the presumption of innocence.

"To receive a new trial because of errors during *voir dire*, [an individual] must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003) (internal quotation marks omitted). The Supreme Court has stated that *voir dire* is not easily subject to appellate review and we should hesitate before second-guessing a district court's decisions regarding the impartiality of a juror:

> Despite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions. In neither instance can

9

an appellate court easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses.

*Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (citations omitted).

Webster-Lee's knowledge of Edinborough, alone, would not have provided a valid basis for a challenge for cause. "[M]erely knowing one of the defendants does not, standing alone, constitute a sufficient showing of bias requiring excusal for cause." *United States v. Calabrese*, 942 F.2d 218, 224 (3d Cir. 1991). Moreover, the District Court, after questioning Webster-Lee, determined that she was not biased against Edinborough. Thus, Edinborough's *voir dire* challenge fails.

VI.

Edinborough accuses Rawlins of perjury and the Government of prosecutorial misconduct. We reject these accusations as unsupported by the record or legal authority.

Edinborough believes that contradictions between Rawlins's testimony at Edinborough's trial and his testimony at the later trial of Roy Brewley, an individual involved in the cocaine trafficking at Cyril E. King Airport, prove that Rawlins committed perjury at Edinborough's trial:

(1)     At Edinborough's trial, Rawlins stated that in July of 2003, Edinborough gave him "four keys" of cocaine to ship. At Brewley's trial, Rawlins said Edinborough just gave him books as a trial run.

(2)     At Edinborough's trial, Rawlins said he received $1000 for assisting in the July 2003 smuggling. At Brewley's trial, Rawlins said he received $500.

(3)     At Edinborough's trial, Rawlins said he received $1000 from Edinborough for assisting in the November 2003 shipment. At Brewley's trial, Rawlins said he

10

received $2000 from Edinborough.

To establish a due process violation premised upon the Government's knowing use of perjured testimony, a defendant must show that (1) a Government witness committed perjury, (2) the Government knew or should have known of the perjury, (3) the perjured testimony went uncorrected, and (4) there is a reasonable likelihood that the false testimony could have affected the verdict. *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008). A witness commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

Edinborough's perjury claim fails. First, there is no evidence that Rawlins's contradictory testimonies were the result of a willful intent to provide false testimony. *See id.* The contradictions could have arisen from Rawlins's "faulty memory." *See id.* Second, even assuming that Rawlins was lying, there is no evidence that the Government knew he was lying at the time of Edinborough's trial. *See Hoffecker*, 530 F.3d at 183. The contradictions in Rawlins's testimony were only evident after he testified in Brewley's trial. Third, the contradictions identified are largely irrelevant to the allegations against Edinborough, and there is not a reasonable likelihood that the allegedly false testimony affected the verdict. *See id.* Edinborough was not charged with any crime for the July 2003 cocaine shipment; he was charged with only the November

11

2003 cocaine shipment. The single contradiction concerning the latter shipment was the amount of money that Rawlins received and that has no meaningful bearing on the verdict.

Edinborough also alleges that the Government engaged in prosecutorial misconduct. His claim amounts to mere editorializing and he provides no legal authority to support his argument. After reviewing the record, we conclude that the Government's actions did not rise to the level of prosecutorial misconduct.

VII.

Finally, Edinborough challenges his 120 month sentence of imprisonment. He argues that the amount of cocaine he was found to have possessed for the purposes of sentencing was incorrect.[11] He claims that the July and November 2003 shipments should not have been factored into his sentencing calculation because of deficiencies in the evidence proving that those shipments occurred. As a preliminary matter, we note that Edinborough did not submit a copy of the sentencing transcript for the record. Without that transcript we cannot conclusively evaluate his vague accusation that his sentence was based on clearly erroneous facts. Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence

---

[11] We review factual findings pertaining to sentencing for clear error. *United States v. Jimenez*, 513 F.3d 62, 85 (3d Cir. 2008).

12

relevant to that finding or conclusion."). Also, after reviewing the record, we reject

Edinborough's accusation that the evidence connecting him to the July and November

2003 shipments was deficient. As such, we reject his claim.[12]

VIII.

In conclusion, Edinborough's claims of error are meritless and we will affirm the

District Court's judgment.

---

[12] We also note that under any plausible sentencing guidelines calculation, Edinborough received a below-guidelines sentence. According to his PSR, he was responsible for 9 kilograms of cocaine and he acted as an organizer, resulting in an offense level of 34 and a guidelines range of 151 to 188 months. If his PSR was followed by the District Court, Edinborough received a sentence 31 months below the minimum recommended by the guidelines. If we look solely to his conviction, the five kilograms of cocaine for which he was convicted of possession with intent to distribute would give him an offense level of at least 32, which results in a guideline sentence of 121 to 151 months. U.S.S.G. § 2D1.1(c)(4) (establishing range of "[a]t least 5 KG but less than 15 KG of Cocaine" as level 32). He received one month less than the minimum recommended sentence for the amount of cocaine he was convicted of possessing. Finally, even Edinborough's own sentencing guidelines calculation, provided in his written objections to the PSR, suggests a guidelines range of 121-151 months.