UNITED STATES of America,
Plaintiff-Appellee,

v.

Ruel Frank BROWN, Jr.,
Defendant-Appellant.

No. 78–5662

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 15, 1979.

Rehearing Denied April 17, 1979.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

John G. Hyde, Midland, Tex. (Court-appointed), for defendant-appellant.

Jamie C. Boyd, U. S. Atty., LeRoy Morgan Jahn, Sidney Powell, Archie C. Pierce, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Ruel Frank Brown, Jr., appeals from his convictions of failure to file income tax returns and filing a false withholding statement in violation of 26 U.S.C.A. §§ 7203 and 7205. Finding his challenges unpersuasive, we affirm.

For the years 1974 and 1975, Brown's tax returns contained very few figures; a lengthy memorandum of law was attached instead of the information requested on the forms. Because the amount of Brown's tax liability or refund could not be determined from the sparse information supplied on the forms, the IRS classified his tax returns as incapable of being processed and sent him letters explaining that the returns were insufficient and enclosed new forms with the request that he redo his returns. In response, Brown did not file amended returns, but instead wrote a letter to the IRS invoking the Fifth Amendment privilege against self-incrimination. From the time of his employment as a mechanic with Continental Airlines in January of 1967, Brown was required to complete Employee Withholding Allowance Certificates, also known as W–4 forms. He claimed only five withholding allowances until 1974, when he asked for a new form and changed the number of allowances to twenty-six. When questioned by his supervisor, he said he could "take care" of the allowances when the time came.

On April 1, 1977, Brown was charged by information with failure to supply required information to the IRS on his 1974 and 1975 tax returns in two counts, 26 U.S.C.A. § 7203, and with willfully supplying a false and fraudulent statement to IRS by claim-

ing twenty-six withholding allowances in a third count, 26 U.S.C.A. § 7205. On April 21, 1977, an attempt was made to arraign Brown. At this attempted arraignment the issue of counsel, on which Brown focuses on this appeal, was first raised. Throughout the initial attempt to arraign him, the district court offered to appoint Brown counsel, if he could not afford to hire his own. However, Brown wanted to choose his own lawyer and, apparently because he could not find one in his price range, he repeatedly insisted that he would proceed to represent himself. Efforts to conduct the arraignment were frustrated because of Brown's misunderstanding of the charges. Eventually, the district court decided that Brown would be better represented by an attorney and set a later date for the arraignment, in order to provide Brown with more time to employ an attorney of his own choice.

Three weeks later, Brown once again appeared for arraignment. Although again instructed that he had a right to be represented by counsel, he insisted that he would represent himself. He stated that he was then unable to find an attorney in whom he had confidence and one he could trust to handle his case. He did not then waive his right to counsel at the ultimate trial, however, but simply chose to represent himself at the arraignment. The arraignment was held and Brown later filed several motions *pro se.*

A year later, at the docket call of his case on May 31, 1978, the district court once again raised the issue of retained or appointed counsel:

THE COURT: . . .. You are representing yourself, aren't you?

MR. BROWN: Yes, sir; Your Honor.

THE COURT: You don't have a lawyer. You are pro se.

MR. BROWN: Yes, sir.

THE COURT: Don't you want a lawyer?

MR. BROWN: No, sir, not at this time I don't Your Honor—

THE COURT: Can you afford to employ a lawyer?

MR. BROWN: Well, not one that I would have confidence in, Your Honor.

THE COURT: What do you mean by that?

MR. BROWN: Well, Your Honor, my feeling is that I sort [sic] agree with the Chief Justice of the United States, probably half of them are incompetent. And I filed a motion for counsel of my choice—

THE COURT: We have Public Defenders though that are not incompetent.

MR. BROWN: Well, Your Honor—

THE COURT: If you can—

MR. BROWN: That's my feeling on it.

THE COURT: In other words, you just do not feel like that you could employ a lawyer that would adequately represent your best interest in this case? All right, then I'll let you proceed pro se it that's your feeling about it.

The district court exhorted Brown to be represented by counsel, but to no avail. Brown insisted that he would prove his innocence *pro se.* He continued to press several pre-trial motions.

On July 5, 1978, just before trial, Brown argued in support of his earlier filed "motion for assistance of counsel." Brown's written motion had named a lay person, who was not licensed to practice law, as the counsel of his choice. In his motion, he dismissed members of the legal profession as antitrust conspirators who fixed prices and successfully suppressed the fundamental freedoms contained in our Constitution through the mechanisms of the American Bar Association and the state bar associations. Brown himself explained his request: "[S]till pending is a motion for counsel of my choice and not of the Court's choice or anybody else's choice, but my choice." At that point, the district court appointed standby counsel to assist Brown during the trial of the case but refused to delay the trial, particularly in view of Brown's request for a speedy trial. After being informed that he could not choose appointed counsel, Brown stated again that he wanted counsel of his own choice appointed. The district court refused this request and explained that Brown could use

his standby appointed attorney in any way that he wished. Brown briefly conferred with his appointed counsel, but before trial told the district court that he could not accept the appointment since he did not know the attorney. Another request for a continuance was denied and the trial went on as scheduled. Brown represented himself, although he did confer with the appointed counsel several times during trial and asked him to make a few remarks at closing argument. The defense did not present any witnesses; Brown's defense was that the government had failed to prove their case against him. The jury convicted Brown of all three counts. At sentencing, Brown claimed that he was not satisfied with his court appointed standby counsel, in particular expressing a dissatisfaction with the short notice and brief preparation time afforded by the district court. He was sentenced to consecutive one-year sentences on counts one and two. A consecutive one-year term imposed on count three was suspended and Brown was placed on supervised probation for five years.

Initially, Brown complains of an alleged deprivation of counsel, arguing, first, that he did not waive his right to counsel and, second, that the belated appointment deprived him of the effective assistance of counsel. We cannot agree.

As a general rule, claims of inadequate representation which have not been raised before the district court cannot be raised on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegation. Such claims have been relegated to later petitions under 28 U.S. C.A. § 2255. *See, e. g., United States v. Rodriguez,* 582 F.2d 1015, 1016 (5th Cir. 1978) and cases cited. In this case, however, the record is adequate to assess the merits of Brown's allegation satisfactorily.

From the foregoing account of the proceedings before the district court, it is quite clear that Brown refused to accept counsel unless provided with counsel of his own choosing, despite repeated correct instructions on the scope of his right to coun-

sel. He consistently offered to accept appointed counsel if, and only if, the district court appointed counsel of his choice. The aegis of the Sixth Amendment does not extend that far. The district court's denial of Brown's motion for counsel of his choice did not deprive him of any Constitutional guarantee. It is beyond peradventure that the Sixth Amendment grants an accused an absolute and unqualified right to have the assistance of counsel for his defense. The right to a particular counsel, however, is not absolute and unqualified. *See United States v. Gray,* 565 F.2d 881, 887 (5th Cir. 1978); *United States v. Harrelson,* 477 F.2d 383, 385 (5th Cir. 1973); *United States v. Sexton,* 473 F.2d 512, 514 (5th Cir. 1973). Indeed, this Court has held that the Sixth Amendment does not afford a defendant an absolute and unqualified right to counsel of choice even when counsel is retained. *See United States v. Dinitz,* 538 F.2d 1214, 1219 (5th Cir. 1976) (*en banc*), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977). Moreover, as we have noted, the person Brown sought as appointed counsel was a lay person and not licensed to practice law. This Court has held that a defendant does not have a Sixth Amendment right to representation by a lay person. *See Weber v. Garza,* 570 F.2d 511 (5th Cir. 1978); *United States v. Arlt,* 560 F.2d 200 (5th Cir. 1977), *after remand,* 567 F.2d 1295 (5th Cir. 1978); *United States v. Cooper,* 493 F.2d 473, 474 (5th Cir.), *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1974).

In this case, the district court explained to Brown that he was not entitled to appointed counsel of his own choosing. Brown's persistence in refusing to accept any counsel except that of his own choosing and his insistence on proceeding *pro se* can only be construed as a knowing and intelligent waiver of counsel. The election was presented to him and he exercised it. As an extra precaution, however, the district court provided standby counsel, with whom Brown occasionally conferred. Yet, overall Brown represented himself by his own choice. He cannot complain now that the quality of his *pro se* defense amounted to a

denial of the effective assistance of counsel. *Faretta v. California,* 422 U.S. 806, 834–36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Jones,* 580 F.2d 785, 787–88 (5th Cir. 1978). Thus, Brown's further complaint about the belatedness of the appointment of counsel is a false issue. Even so, viewing the record in its entirety, we could not hold that Brown was denied the effective assistance of counsel through the performance of his court appointed standby attorney. *See Carbo v. United States,* 581 F.2d 91, 93 (5th Cir. 1978); *United States v. Gray,* 565 F.2d 881, 887 (5th Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978); *United States v. Cooper,* 493 F.2d 473, 474, *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1976).

Brown's second challenge to his conviction is based on his assertion that the evidence adduced at trial was insufficient to sustain his convictions because the government failed to prove that he acted willfully. Viewing the evidence in the light most favorable to the verdict, with all reasonable inferences and credibility choices made to sustain it, however there is substantial evidence supporting the verdict. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Trull,* 581 F.2d 551, 552 (5th Cir. 1978); *United States v. Tobin,* 576 F.2d 687, 692 (5th Cir. 1978).

■ That Brown acted willfully is obvious: he entered little or no information on his 1040 tax return forms and claimed 26 withholding allowances on his W-4 form knowing that he could not be entitled to that large a number of exemptions; the non-processable forms were returned to him with a request that he redo them, yet he filed no amended returns; he attached a memorandum of law to his tax return form, rather than filling in the required information; and he is an active member of the "Tax Rebels of Odessa" and had personally, publicly advocated the very method of avoiding paying taxes which he used. As this Court has noted, "[t]his showing of willfulness will most often be made by circumstantial evidence," and may be made by

such conduct as affirmative acts of evasion such as the providing false or incomplete information—what was shown here. *United States v. Brown,* 548 F.2d 1194, 1199 (5th Cir. 1977). Brown's status as a "tax protestor" and the statements he made regarding the payment of taxes buttressed the circumstantial evidence on the willfulness of his actions. Further, he was not protected by the Fifth Amendment in filing such a "protest return." *United States v. Johnson,* 577 F.2d 1304, 1311 (5th Cir. 1978). *See also United States v. Wade,* 585 F.2d 573 (5th Cir. 1978); *United States v. Brown,* 548 F.2d 1194, 1198 (5th Cir. 1978).

■ On the false number of deductions count, the evidence established that, even giving him the benefit of the doubt, Brown was entitled to no more than seven exemptions in 1974 and six in 1975. While Brown argues that the evidence failed to establish that he was *not* entitled to nineteen more deductions, once the government has established a *prima facie* case, "the taxpayer defendant—like all other defendants—'remains quiet at his peril.'" *United States v. Hiett,* 581 F.2d 1199, 1202 (5th Cir. 1978), quoting *Holland v. United States,* 348 F.2d 121, 138–39, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ As his third point of error, Brown contends that he should have been granted an evidentiary hearing on his motion alleging selective prosecution. A review of the record reveals that the district court thoroughly considered each motion filed by Brown *pro se,* determined that each raised a question of law and did not require oral argument, and ruled on them. The district court's action in ruling on the motions without a hearing was well within its broad discretion, and no abuse of that discretion has been demonstrated here by Brown. *United States v. Cantu,* 557 F.2d 1173, 1179–80 (5th Cir. 1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978). *Cf.* Fed.R.Crim.P. 17.1.

■ Further, Brown failed to make the requisite *prima facie* showing that others similarly situated have not generally been

prosecuted and that the government's prosecution of him was selective, invidious, in bad faith, or based on impermissible considerations such as race, religion, or his exercise of Constitutional rights. As this Court has held, before an evidentiary hearing is required on a selective prosecution charge, a defendant must prove a "colorable entitlement" to the defense and its materiality. *United States v. Kahl,* 583 F.2d 1351, 1353 (5th Cir. 1978); *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir. 1978); *United States v. Murdock,* 548 F.2d 599, 600 (5th Cir. 1977). Brown was not entitled to a hearing on his mere allegation of selective prosecution and thus the district court did not err in ruling on the motion without a hearing. *United States v. Murdock,* 548 F.2d at 601.

There being no merit in Brown's challenges, the judgment entered on his conviction is

AFFIRMED.