**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eddie Milton GAREY, Jr., a.k.a. Miles
Garey, a.k.a. Milton Garey, a.k.a. Ed-
die Garey, Defendant–Appellant.**

**No. 05–14631.**

United States Court of Appeals,
Eleventh Circuit.

April 11, 2007.

William J. Mason (Court–Appointed),
Columbus, GA, for Defendant–Appellant.

Dean S. Daskal, Columbus, GA, for U.S.

Before BIRCH and BLACK, Circuit
Judges, and PRESNELL,* District Judge.

BIRCH, Circuit Judge:

Eddie Milton Garey, Jr. ("Garey") ap-
peals his 360–month sentence imposed af-
ter a jury trial in which he was found
guilty of 27 counts arising out of a series of
bomb threats made in September 2003.
On appeal, Garey argues that: (1) the
district court erred in holding that he had
knowingly and voluntarily consented to
represent himself at trial; (2) the district
court erred by enhancing his sentence for
terrorism, pursuant to U.S.S.G. § 3A1.4;
(3) the district court erred by making fac-
tual findings at sentencing; and (4) his
sentence is unreasonable. After review,
we hold that the district court committed
reversible error in finding that Garey vol-
untarily, knowingly, and intelligently

* Honorable Gregory A. Presnell, United States
District Judge for the Middle District of Flori-     da, sitting by designation.

waived his Sixth Amendment right to counsel. We REVERSE Garey's conviction and REMAND the matter to the district court. As a result, we do not reach the merits of Garey's remaining claims regarding his sentence.

## I. BACKGROUND

In March 2004, a federal grand jury returned a superceding indictment charging Garey with: (1) 11 counts of obstruction of justice, in violation of 18 U.S.C. § 1951, based on "a series of telephone calls to the Macon—Bibb County Emergency 911 Center" made between 2 September 2003, and 11 September 2003, "in which the defendant[,] utilizing an altered voice, would threaten to bomb and damage, and cause death and destruction, to various businesses and locations within areas of the City of Macon and the County of Bibb, and would make various demands for currency, cash, and monies"; (2) 5 counts of threatening to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2),[1] based on this same series of telephone calls; (3) 5 counts of making a threat which affects interstate commerce, in violation of 18 U.S.C. § 844(e), based on this same series of telephone calls; (4) 5 counts of making counterfeit securities, in violation of 18 U.S.C. § 513; and (5) possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). R2–68.

Preceding the return of the superceding indictment, the government moved, without objection from defense counsel, that Garey be sent for an evaluation as to his competence. After a report was returned to the district court, the parties stipulated that Garey was competent to stand trial. Before the trial commenced, Garey submitted multiple *pro se* motions and other pleadings, including numerous motions alleging the ineffective assistance of counsel and that his court-appointed counsel, Scott Huggins, had an impermissible conflict of interest. Three days before the trial, Garey filed a *pro se* motion to disqualify his appointed counsel. Garey alleged in his motion that the law office where his court-appointed counsel engaged in business was a target of the alleged crimes. Garey detailed several alleged incidents where his court-appointed counsel failed to consult with him prior to taking actions, conduct that Garey felt violated his legal rights.

The district judge conducted a motion hearing, in which he informed Garey that he would deny the motion, finding that there was "no legal conflict [of interest] insofar as defense counsel is concerned" and that Garey's counsel was "doing a more than competent job in this case." R11, 169 at 5–6. The district court notified Garey that he did not have the right to select his appointed trial counsel. The court informed Garey of his right to proceed without an attorney, but cautioned him that there were advantages to having an attorney represent him. The court listed some illustrative pitfalls, including the questioning of witnesses, strategic decisions regarding testimony, and various evidentiary rules regarding impeachment and cross-examination.

When Garey insisted that he did not want to represent himself but that he would not tolerate his appointed counsel, the trial judge informed Garey that *if he would not allow himself to be represented by his appointed counsel, then it was the court's understanding that Garey wanted to represent himself.* After the court reiterated its ruling regarding Huggins's representation, Garey persisted in articulating his concerns with his court-appointed

---

**1.** The indictment mistakenly states that these counts are for a violation of "Section 2332a(2)," instead of § 2332a(a)(2). R2–68 at 4.

counsel. The following colloquy took place:

> COURT: The question is: Do you want to proceed with Mr. Huggins, or do you want to proceed with representing yourself?
>
> GAREY: Okay. Like I said—
>
> COURT: That's the only question.
>
> GAREY: I'm going to say it again. I'm not voluntarily waiving my right to have counsel.
>
> . . .
>
> COURT: I need an answer. Do you wish to have Mr. Huggins represent you, or do you wish to represent yourself?
>
> GAREY: Your Honor, if you'll be fair with me. I want to make one more statement and I'll answer your question affirmatively. Is that fair, Your Honor?
>
> COURT: Yes, sir.

*Id.* at 13–14. Garey then reiterated a host of issues he had with Huggins, including Huggins's failure to show Garey evidence, to file certain motions, and to contact Garey's sister. The following exchange ensued:

> GAREY: I am not going to let Mr. Huggins represent me. And if the Court is giving me no other choice, I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive. But I'm not going to let Mr. Huggins represent me, because he's a victim of the crime I'm accused of. I don't feel comfortable.
>
> . . .
>
> COURT: Just to be fair to you, let me make sure the record is clear. It's my understanding that the defendant wishes to have competent counsel appointed to represent him.
>
> GAREY: Conflict-free counsel.
>
> COURT: Conflict-free counsel to represent him. He has concluded, in his

mind, that Mr. Huggins is not conflict-free; and therefore, he does not wish to have Mr. Huggins represent him. If the court does not appoint other counsel, and indicates to the defendant that the only counsel that he can be represented by, in an appointed capacity ... is Mr. Huggins, then it's the Court's understanding that the defendant wishes to proceed with representation of himself without counsel. Is everything I stated accurate?

> GAREY: Involuntarily without counsel, yes.
>
> COURT: In other words, if I say that I find that Mr. Huggins is competent and conflict-free, and he's the only appointed lawyer you are going to get, your choice would be to proceed with representing yourself without counsel. Is that correct?
>
> GAREY: I'll say it again, Your Honor. I'm going to involuntarily represent myself because I do not feel comfortable with the victim of the crime that I'm accused of—
>
> COURT: The Court interprets that to mean if the Court does not assign other counsel other than Mr. Huggins, that the defendant wishes to proceed to represent himself. The Court has questioned the defendant as to—and has advised the defendant of the Court's advice that he proceed with representation by Mr. Huggins. The Court has also advised the defendant of the downside of not being represented by counsel. Notwithstanding that advice, noticed by the Court, the Court finds that the defendant has voluntarily and knowingly decided to—
>
> GAREY: Involuntarily, Your Honor.
>
> COURT: You can put your spin on it. The Court finds that the defendant has knowingly and voluntarily decided

to proceed with representation of himself. The Court is going to request that Mr. Huggins remain as stand-by counsel in case that becomes appropriate or necessary.

*Id.* at 14–17. After a jury trial wherein Mr. Huggins served as stand-by counsel, the jury found Garey guilty of all 27 counts. This appeal followed.

## II. DISCUSSION

### A. *The Preeminent Right to Counsel*

Garey argues that the district court erred when it held that he knowingly and voluntarily waived his right to assistance of counsel at trial. Specifically, Garey asserts that he continuously and clearly informed the trial court that he felt court-appointed counsel labored under an actual conflict of interest and could not represent him at the trial of this case but the district judge impermissibly interpreted this as a desire to proceed *pro se.*

■ "A district court's conclusion that a defendant's waiver [of assistance of counsel] is valid—that it is knowing, voluntary, and intelligent—is a mixed question of law and fact that we review *de novo.*" *United States v. Kimball,* 291 F.3d 726, 730 (11th Cir.2002) (per curiam). On appeal, the government has the burden of proving the validity of the waiver. *Greene v. United States,* 880 F.2d 1299, 1303 n. 6 (11th Cir.1989).

As we recounted in *Marshall v. Dugger,* "a criminal defendant has both a constitutional right to representation by counsel and a constitutional right to self-representation. To accommodate both of these rights simultaneously, this court has held that the right to counsel is preeminent over the right to self-representation because the former attaches automatically and must be waived affirmatively to be lost, while the latter does not attach unless and until it [is] *asserted.*" 925 F.2d 374, 376 (11th Cir.1991) (quotations omitted).

"Waiver of the right to counsel and invocation of the correlative right to self-representation is no simple matter ...." *Id.* "First, the defendant must 'clearly and unequivocally' assert his desire to represent himself thus waiving his right to counsel. Second, the court must determine that the defendant has made this election 'knowingly and intelligently.'" *Id.* at 376–77.

■ Like the defendant in *Marshall,* Garey never clearly stated his desire to proceed without counsel. *See id.* at 377 ("Marshall never clearly stated his desire to proceed pro se. When asked to choose among the three options presented by the court—(1) continue with his appointed counsel, (2) represent himself with the aid of standby counsel, or (3) represent himself alone—Marshall simply rejected representation or standby representation by his appointed counsel. He did not affirmatively choose self-representation."). In fact, Garey sought counsel (albeit counsel that was, in his mind, conflict-free). The court seemed to recognize this at the pretrial hearing addressing Garey's contentions.

> COURT: Just to be fair to you, let me make sure the record is clear. It's my understanding that the defendant *wishes to have competent counsel appointed to represent him.*
>
> GAREY: Conflict-free counsel.

R11 at 15 (emphasis added). Garey was quite adamant that he was not waiving his right to assistance of counsel and that he felt he was being "involuntarily" forced to represent himself. *Id.* The closest he came to asking the court that he be allowed to represent himself was when he stated "if the Court is giving me no other choice, I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive. But I'm not going to let Mr. Huggins represent me,

because he's a victim of the crime I'm accused of." *Id.*

The colloquies in both *Marshall* and this case are strikingly similar. In both cases the defendants obstinately repeat that they find their appointed counsel inappropriate. Marshall thought his appointed counsel was not qualified to represent him, and Garey thought his appointed counsel was ineffective and impermissibly conflicted. In both colloquies, the hearings proceeded either on the "assum[ption]" or "interpret[ation]" that the defendant's responses meant they must want to proceed *pro se*. *Marshall*, 925 F.2d at 376 (assuming that Marshall's response that he did not believe his appointed counsel was qualified meant that he wanted to proceed *pro se*); R11 at 16 ("The Court interprets that to mean if the Court does not assign other counsel other than Mr. Huggins, that the defendant wishes to proceed to represent himself."). Showing dogged persistence, Garey rejected the trial judge's interpretation that he was volun- tarily waiving his right to counsel. However unreasonable Garey's repeated demands may have been,[2] the *Marshall* court rejected the rationale that unreasonable attempts at dismissing one's court appointed counsel necessarily equate to voluntarily waiving one's right to counsel. *See Marshall*, 925 F.2d at 378 (Cox J., dissenting) (citing *United States v. Moore*, 706 F.2d 538, 540 (5th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983) ("a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel ... is the functional equivalent of a knowing and voluntary waiver of counsel."")).[3] The *Marshall* majority found that the request to proceed *pro se* "must be an express assertion of the right to self representation." *Id.* at 377.[4]

The dissent loses sight of the preeminent right to counsel. It is important to remember that the hearing's initial purpose was to resolve Garey's motion to replace his counsel. It was *not* a hearing on

**2.** As noted, the district court denied Garey's motion for new counsel, ruling that Garey's court-appointed counsel was neither conflicted or ineffective. Garey does not appeal this ruling.

**3.** We recognize that, in two cases prior to holding in *Marshall*, we cited to *Moore*. Our citation to *Moore* in those earlier cases, however, were in different contexts and *Moore* was used to support different propositions. In *Harding v. Davis*, we cited *Moore* for support of the proposition "that an accused cannot force the appointment of new counsel by simply refusing to cooperate with his attorney, notwithstanding the attorney's competence and willingness to assist." 878 F.2d 1341, 1344 n. 2 (11th Cir.1989). And although in *Harding* we cited *Thomas v. Wainwright*'s citation to *Moore* for the proposition that "a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel *may be* the functional equivalent of a knowing and voluntary waiver of counsel," *id.* (citing 767 F.2d 738, 743 (11th Cir.1985)) (emphasis added), *Thomas*'s holding was more limited. In *Thomas*, we only held that "at some point a criminal defendant can be deemed to have waived to a certain extent his constitutional right to effective assistance by virtue of his unreasonable refusal to communicate with his attorney." 767 F.2d at 743 (citing *Moore*, 706 F.2d at 540) (concluding that the defendant's "intractable silence amounted to a waiver of any change in counsel to which he may otherwise have been entitled").

**4.** Furthermore, we are not persuaded by the government's reliance on *United States v. Brown*, 591 F.2d 307 (5th Cir.1979). In *Brown*, the defendant "repeatedly insisted that he would proceed to represent himself," a critical affirmative action that is not present here. 591 F.2d at 309; *see id.* ("THE COURT: You are representing yourself, aren't you? MR. BROWN: Yes, sir; Your Honor. THE COURT: You don't have a lawyer. You are pro se. MR. BROWN: Yes, sir. THE COURT: Don't you want a lawyer? MR. BROWN: No, sir, not at this time I don't Your Honor.").

a motion to proceed *pro se.* At no point in the hearing did Garey ever request to proceed *pro se.* There was no appearance form filed that indicated that Garey wished to represent himself. *See, e.g., United States v. Taylor,* 113 F.3d 1136, 1138 (10th Cir.1997) (defendant filed appearance form indicating he wished to represent himself). There was no motion by Huggins to withdraw as counsel of record because Garey indicated to him that Garey intended to represent himself *pro se. See, e.g., id.* (defendant's counsel filed motion to withdraw on the basis that his client intended to represent himself); *Maynard v. Meachum,* 545 F.2d 273, 275 (1st Cir.1976) (defendant's counsel filed motion to withdraw on the basis that his client did not "desire [his] services"). There was no jailhouse letter from Garey seeking to invoke his right to self-representation. *See, e.g., Nelson v. Alabama,* 292 F.3d 1291, 1295 (11th Cir.2002) ("Nelson clearly asserted this right [of self-representation] in his December 29, 1993 letter to the trial court."). Instead, the record indicates that *both the court and Garey* acknowledged that Garey sought counsel. Even the Tenth Circuit case cited by the dissent notes that courts "will indulge in every reasonable presumption against waiver." *Taylor,* 113 F.3d at 1140 (quotation omitted). The dissent's analysis is essentially the opposite of *Taylor*'s, taking every presumption *in favor of* waiver.

The record reveals that there is manifestly nothing *clear* and *unequivocal* about Garey's actions. *See, e.g.,* R11 at 15 ("I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive."). The Random

House Dictionary defines "equivocate," in part, as: "to use ambiguous or unclear expressions, usually to avoid commitment or in order to mislead; prevaricate or hedge." The Random House Dictionary of the English Language 657 (2d ed.1987). Garey's responses and interjections *were the definition of equivocation.* Garey repeatedly used equivocal language to avoid committing himself to a clear position. *See, e.g., id.* at 16 ("COURT: ... it's the Court's understanding that the defendant wishes to proceed with representation of himself without counsel. Is everything I stated accurate? GAREY: Involuntarily without counsel, yes.").[5]

Defendants who attempt to manipulate the right to counsel and self-representation are, unfortunately, nothing new. *See Cross v. United States,* 893 F.2d 1287, 1290 (11th Cir.1990) ("In recognition of the thin line that a district court must traverse in evaluating demands to proceed *pro se,* and the knowledge that shrewd litigants can exploit this difficult constitutional area by making ambiguous self-representation claims to inject error into the record, this Court has required an individual to clearly and unequivocally assert the desire to represent himself."). Stating "I will *have to go along* with the choice of *involuntarily waiving* my right to counsel, *involuntarily waive,"* R11 at 15 (emphasis added), as Garey did, is hedging at best, conscious manipulation at worst, but plainly is not the same as voluntarily invoking one's right to self-representation in a clear and unequivocal manner. Barring the necessary clear assertion, we are bound to acknowledge that the preeminent right is the

---

5. Additionally, the colloquy that the dissent cites from the second day, immediately proceeding the beginning of the trial, was essentially an exercise in futility since the trial judge had already ruled that Garey voluntarily, knowingly, and intelligently waived his right to counsel the day before. In fact, the district court began with the admonition: "Mr. Garey, I have already made the decision and found you competent to represent yourself and your decision to proceed with your own representation was made freely and voluntarily, after hearing from you yesterday." R13 at 4.

right to counsel and it attaches unless affirmatively waived. *See Marshall,* 925 F.2d at 376 (reiterating the preeminence of the right to counsel and that the right to self-representation "does not attach unless and until it is *asserted*" (quotations omitted)).

The dissent suggests that since Garey was presented with a meaningful choice between two constitutional alternatives, and chose one over the other, the action was voluntary, regardless of how and what Garey said or failed to say. The *Marshall* court rejected this oversimplification in circumstances such as these, and the dissent's citation to sister circuits does not overcome our circuit's binding precedent in *Marshall.* When viewed in a vacuum, Marshall was also presented with a choice between constitutional alternatives, but there we looked for something more—specifically, an initial clear and unequivocal *request* for self representation. *See id.* at 377. To state simply that the choices presented to Garey were constitutionally sound ignores *Marshall*'s clear dictate that courts place the onus on the defendant to clearly assert one's right to self-representation, and that merely examining the choices presented to the defendant by the court does not end our inquiry.[6] In the absence of a clear invocation of the right to self representation, the default procedure

is that defendants like Garey retain their counsel until a time and manner wherein they clearly ask the court to waive that right and the court deems such request proper.[7]

Under the law of this circuit, Garey's actions were insufficient to invoke the Sixth Amendment right of self-representation. Here, "[t]here was no 'request,' written or oral, for self-representation." *See id.,* 925 F.2d at 377. Thus, the trial court committed reversible error in allowing Garey to proceed *pro se.*[8] In the absence of a clear and unequivocal request to proceed *pro se,* the proper course was for the district court to require Garey to proceed with his court-appointed counsel. *See id.*

### B. *Sentencing Issues*

Garey also argues three sentencing issues: (1) that the district court erred when it enhanced his sentence for terrorism pursuant to U.S.S.G. § 3A1.4(a), based on his purely domestic conduct; (2) for the first time on appeal, that the district court erred in light of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), when it enhanced his sentence for terrorism pursuant to U.S.S.G. § 3A1.4, where the issue of whether his conduct constituted "a federal crime of terrorism" was not determined by the

---

**6.** The *Marshall* court stated that "[w]hen asked to choose among the three options presented by the court—(1) continue with his appointed counsel, (2) represent himself with the aid of standby counsel, or (3) represent himself alone—Marshall simply rejected representation or standby representation by his appointed counsel." 925 F.2d at 377. Under the dissent's analysis, the court in *Marshall* would have reached the opposite result, for all three of these choices were constitutionally permissible. Yet the *Marshall* court did not approve of Marshall dismissing his counsel and proceeding to trial *pro se.*

**7.** We note that a defendant's right to proceed *pro se* is not unqualified. *See United States v.*

*Young,* 287 F.3d 1352, 1354 (11th Cir.2002) ("[W]e conclude that the district court properly denied defendant [ ] Young's [ ] request to proceed *pro se* as untimely because Young asserted his request after the jury was empaneled.").

**8.** Because we find that Garey's waiver was not voluntary, we do not reach the issue of whether his waiver was knowing and intelligent under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See Marshall,* 925 F.2d at 377 n. 1 (not formally reaching the issue, but noting that we would find the evidence insufficient to support the contention that Marshall's waiver was "knowing and intelligent").

jury; and (3) that his 360–month sentence was unreasonable. Because we vacate the guilty verdict, we do not reach Garey's sentencing issues.

### III. CONCLUSION

The trial court committed reversible error in allowing Garey to proceed *pro se.* We REVERSE Garey's conviction and REMAND the matter to the district court.

BLACK, Circuit Judge, dissenting:

The Court holds, "Garey never clearly stated his desire to proceed without counsel." I respectfully dissent. I conclude Garey clearly, unambiguously, and voluntarily waived his right to counsel and affirmatively asserted his intent to represent himself.

A. *Underlying Facts*

Garey had two separate colloquies with the district court before trial. The first colloquy occurred during the district court's hearing on his motion to disqualify his court-appointed attorney, Scott C. Huggins. The following exchange took place:

COURT: I am not appointing a new lawyer for you. The question is: Do you want to proceed with Mr. Huggins, or do you want to proceed with representing yourself?

. . . .

GAREY: ... I'm not voluntarily waiving my right to have counsel. Mr. Huggins failed to show me the video-tape—

. . . .

COURT: I need an answer. Do you wish to have Mr. Huggins represent you, or do you wish to represent yourself?

GAREY: Your Honor, if you'll be fair with me. I want to make one more statement and I'll answer your question affirmatively.

Garey again explained why he believed Huggins should be disqualified. The colloquy then continued:

GAREY: I am not going to let Mr. Huggins represent me. And if the Court is giving me no other choice, I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive. But I am not going to let Mr. Huggins represent me .... *Faretta* says the right goes to the accused. 413 U.S. at page 806, 819 through 20, 93 S.Ct. 2607, says it's the accused who suffers the adversity if the defense failed.

. . . .

COURT: [The Defendant wants] [c]onflict-free counsel to represent him. He has concluded, in his mind, that Mr. Huggins is not conflict-free; and therefore, he does not wish to have Mr. Huggins represent him. If the Court does not appoint other counsel, and indicates to the defendant that the only counsel that he can be represented by, in an appointed capacity, that the government is going to pay for, is Mr. Huggins, then it's the Court's understanding that the defendant wishes [to] proceed with representation of himself without counsel. Is everything I stated accurate?

GAREY: Involuntarily without counsel, yes.

. . . .

I'll say it again, Your Honor. I'm going to involuntarily represent myself because I do not feel comfortable with the victim of the crime that I'm accused of—

. . . .

COURT: ... [T]he Court finds that the defendant has voluntarily and knowingly decided to—

GAREY: Involuntarily, Your Honor.

COURT: You can put your spin on it

. . . .

The Court is going to request that Mr. Huggins remain as stand-by counsel in case that becomes appropriate or necessary.

The second colloquy was the next day, before the trial began. The district court encouraged Garey to allow Huggins to represent him and assured him that even if he accepted Huggins as court-appointed counsel, he had preserved for appeal the issue of whether Huggins had a conflict or was otherwise ineffective. The following colloquy ensued:

GAREY: Your Honor, I'm not voluntarily waiving my Sixth Amendment rights, but I'm not going to allow Mr. Huggins to continue as representation. I mean, if you let him stay on as stand-by counsel for insurance, I'm not going to argue with the Court on that . . . .

COURT: . . . [D]o you wish to represent yourself or do you wish Mr. Huggins to represent you?

GAREY: I'm going to manage my own destiny at that point, Your Honor, because I have no other alternative except to proceed either with an attorney who I believe is a conflict or to represent myself. The Court is only giving me two options, so I have to choose the lesser option, which is to go without counsel, because I don't want to go with a counsel that we're not agreeing eye to eye on. I'm strong about my issues.

Garey then tried the case *pro se* with Mr. Huggins remaining as standby counsel. He now appeals, arguing the district court violated his right to counsel by finding he clearly asserted his right of self-representation and voluntarily waived his right to counsel.

B. *Standard*

In order for a defendant to assert his right to represent himself, he must clearly and unequivocally make the request. *Marshall v. Dugger*, 925 F.2d 374, 376–77 (11th Cir.1991). This Court employs a reasonable person standard to determine whether the defendant affirmatively stated his intent to represent himself. *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir. 1991) (en banc). A defendant is required to assert the request "unambiguously to the court so that no reasonable person can say that the request was not made." *Id.* (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir.1986)). A defendant need not "use any particular words to invoke the right of self-representation." *Marshall*, 925 F.2d at 377. Likewise, there is no "talismanic formula" necessary "to open the eyes and ears of the court to his request." *Dorman*, 798 F.2d at 1366.

C. *Garey's Actions*

After reviewing both colloquies, I conclude Garey's actions to be a clear and unequivocal request to proceed *pro se.* The district court presented Garey with two constitutional choices after Garey requested new counsel.[1] The court gave him

---

1. Garey was given two constitutional choices, and his choice between them was voluntary. During his colloquies with the district court, Garey claimed the district court should have disqualified Mr. Huggins because of a conflict of interest. The district court correctly found that Mr. Huggins was not acting under a conflict of interest, and Garey does not challenge this finding on appeal. *See Smith v. White*, 815 F.2d 1401, 1401 (11th Cir.1987) (concluding a mere hypothetical conflict will

not suffice to establish a violation of the Sixth Amendment). The district court, therefore, presented Garey with the constitutional choice of proceeding with Mr. Huggins as his appointed counsel or representing himself. *See United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir.1997) (holding a reviewing court need only be "confident the defendant is not forced to make a 'choice' between incompetent counsel or appearing *pro se.*"); *Wilks v. Israel*, 627 F.2d 32, 35 (7th Cir.1980)

the option of representing himself or continuing with his court-appointed counsel. He did not equivocate. Garey affirmatively chose self-representation multiple times, and he never asserted a desire to have Mr. Huggins represent him.

During the first colloquy, in response to the district court asking Garey if he planned to represent himself, Garey stated, "Involuntarily without counsel, yes .... I'll say it again, Your Honor. I'm going to involuntarily represent myself ...." The next day, in response to the district court asking Garey whether he wanted to represent himself, Garey stated, "I'm going to manage my own destiny at that point .... The Court is only giving me two options, so I have to choose the lesser option, which is to go without counsel .... I'm strong about my issues."[2] Finally, Garey never wavered in his intent to represent himself. Garey repeatedly stated his intent to represent himself when presented with the choice of proceeding with Huggins as appointed counsel or proceeding *pro se.*

As for Garey's "dogged persistence" in labeling his actions as "involuntary," Garey's decision was voluntary because it was the product of a choice between two legally adequate courses of action. Labeling one's actions as "involuntary" does not make those actions involuntary, unclear, or equivocal. Garey wanted new appointed counsel to which he had no right. Whether Garey continued with Huggins as his lawyer or represented himself, he would have considered either choice "involuntary" because he would not have received

what he requested, new appointed counsel. Both courses of action the court presented to him, however, were constitutionally adequate. Therefore, his actions were voluntary.

### D. *Marshall v. Dugger*

Garey and the Court, however, rely on this Circuit's precedent in *Marshall v. Dugger*, 925 F.2d 374 (11th Cir.1991). In particular, the Court concludes "[t]he colloquy in both *Marshall* and this case are strikingly similar." The Court holds "[t]here was no 'request,' written or oral, for self-representation" in this case, just as there was no request in *Marshall.* Unlike the defendant in *Marshall*, who never affirmatively requested self-representation, Garey actually requested it clearly and unequivocally multiple times.

In *Marshall*, the district court presented the defendant with three options: "(1) continue with his appointed counsel; (2) represent himself with the aid of standby counsel; or (3) represent himself alone." *Marshall*, 925 F.2d at 377. In response, the defendant said, "I don't feel as though Mr. Osteen [his court-appointed counsel] is qualified to handle my case." *Id.* at 376. Subsequently, the prosecutor said, "Okay. Then I assume your answer is yes, you don't want Mr. Osteen advising you in any respect; is that correct?" *Id.* The defendant then said, "Right." *Id.* The district court interpreted the exchange as an assertion of Marshall's right to represent himself. *Id.* On appeal, this Circuit properly concluded, "Marshall simply rejected

---

(holding the choice will be considered voluntary so long as the choice is not constitutionally offensive); *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir.1976) ("A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action" and just because he does not like his choice does not make that choice involuntary).

**2.** In addition, Garey understood the concepts of standby counsel and agreed to have standby counsel as "insurance." He also knew the law and cited to the correct page for the holding of *Faretta*, a controlling Supreme Court precedent.

representation or standby representation by his appointed counsel. He did not affirmatively choose self-representation." *Id.* at 377.

Following that line of reasoning, the Court now concludes "[t]he closest [Garey] came to asking the court that he be allowed to represent himself was when he stated 'if the Court is giving me no other choice, I will have to go along with the choice of involuntarily waiving my right to counsel, involuntarily waive.'" Citing *Marshall,* the Court holds "there was no 'request,' written or oral, for self-representation."

In contrast to the defendant in *Marshall,* Garey actually stated he intended to represent himself.[3] As discussed above, Garey stated multiple times that if the district court would not appoint new counsel, he intended to represent himself. The defendant in *Marshall* never chose to represent himself. He only refused to have appointed counsel, which the district court interpreted as asserting the right to self-representation. *See Marshall,* 925 F.2d at 377. Unlike the defendant in *Marshall,* Garey did assert an intention not just to dismiss his appointed counsel but also to proceed *pro se,* doing so on multiple occasions.

E. *Conclusion*

This Court has recognized the difficulty district courts face during proceedings such as these and that "shrewd litigants can exploit this difficult constitutional area." *Cross v. United States,* 893 F.2d 1287, 1290 (11th Cir.1990). Even after indulging every reasonable presumption against waiver, Garey still clearly and unequivocally stated his intention to repre-

sent himself and voluntarily decided to dismiss his court-appointed counsel. *See Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). We are moving toward requiring magic words or a talismanic formula to adequately request self-representation if we deny a defendant his voluntary and repeated request to represent himself solely because he labels his request as "involuntary." Magic words and talismanic formulas are not necessary. *See Dorman,* 798 F.2d at 1366. Rather the law simply requires the defendant to assert his request unambiguously so that no reasonable person could say the request was not made. *Stano,* 921 F.2d at 1143. Applying this standard, I conclude Garey clearly, unequivocally, and voluntarily decided to forego representation and proceed *pro se.*

---

3. The majority is absolutely correct when it states "Marshall was also presented with a choice between constitutional alternatives, but there we looked for something more-specifically, an initial clear and unequivocal request for self representation." In this case, I looked for something more, and I found something more, a defendant who asserted an intention to represent himself multiple times.